IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
THOMASVILLE DIVISION

| | |
|---|---|
| VICKIE BRYANT, | : |
| Plaintiff, | : |
| v. | : Civil Action No.<br>: 6:05-cv-11 (HL) |
| JOHN D. ARCHBOLD MEMORIAL HOSPITAL dba ARCHBOLD MEMORIAL HOSPITAL and MICHAEL ARTHUR CROWLEY, M.D., | : |
| Defendants. | : |

**ORDER**

Before the Court is Defendants' Motion for Summary Judgment (Doc. 16), in which Defendants' ask the Court to enter summary judgment on Plaintiff's Emergency Medical Treatment and Active Labor Act ("EMTALA") claims and dismiss Plaintiff's remaining state law claims due to lack of jurisdiction. After consideration of the pleadings, depositions, affidavits, and briefs, the Court hereby grants Defendants' Motion for Summary Judgment for the reasons explained below.

**I. FACTS**

Construing the evidence in the light most favorable to the Plaintiff, as the non-moving party, the Court finds as follows. Plaintiff was involved in an automobile accident on September 25, 2004 and later sought treatment at Defendant John D. Archbold

Memorial Hospital ("Defendant Hospital"). Upon arrival Plaintiff and Plaintiff's husband provided the individual at the registration desk with their son's automobile insurance card and specifically told the individual that Plaintiff did not have medical insurance. Plaintiff's husband also told the individual that the automobile insurance would not cover any medical treatment.[1]

Around fifteen minutes after arrival, Plaintiff was initially examined by triage nurse Jessica Connell. Nurse Jessica Connell reported that Plaintiff had been involved in a motor vehicle accident, that the airbag deployed, and that Plaintiff was experiencing left rib and shoulder pain. Nurse Jessica Connell also recorded Plaintiff's vital signs and medical history. Shortly thereafter, Plaintiff was also examined by Registered Nurse Michelle Connell. Nurse Michelle Connell examined Plaintiff and reported that all systems were within normal limits with the exception of complaints of chest tenderness, presumably due to the deployment of the airbag.

Shortly after Nurse Michelle Connell completed her examination and just under an hour after arrival, Plaintiff was evaluated by Defendant Michael Arthur Crowley ("Defendant Crowley"). Defendant Crowley examined Plaintiff's head, neck, and heart and determined that all were within normal limits. Defendant Crowley indicated that

---

[1] The Court notes that Defendants dispute this fact. Defendants allege that Plaintiff and Plaintiff's husband presented identification and insurance information at registration. Defendants also allege that Plaintiff stated that her medical expenditures would be covered by an automobile liability insurance policy.

Plaintiff was experiencing tenderness in her left ribcage area and ordered a left rib x-ray series. Defendant Crowley also ordered pain medication, which was administered by Nurse Michelle Connell; however, Defendant Crowley never physically examined Plaintiff's abdomen.[2]

Plaintiff was thereafter transported to the Radiology Department where the x-rays ordered by Defendant Crowley were performed. After returning to the Emergency Department, Plaintiff's x-rays were read, and Defendant Crowley determined that Plaintiff had fractured two of her ribs. Plaintiff was then discharged, approximately two and one half hours after arrival, after reporting decreased pain. Plaintiff was diagnosed, days later, with a ruptured spleen and underwent emergency surgery to remove the damaged organ.

Plaintiff filed this case on March 9, 2005 seeking damages for her mis-diagnosis. Plaintiff asserted a claim under the EMTALA and a state law claim of negligence. The parties have engaged in extensive discovery, and Defendants have filed a Motion for Summary Judgment with respect to the EMTALA claim. Defendants also urge the Court to refuse to exercise supplemental jurisdiction, should Plaintiff's EMTALA claim fail.

## II. ANALYSIS

A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[2]The Court notes that Defendants also dispute this fact.

is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all evidence and any logical inferences in a light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).

"[T]he plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time and discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant carries the initial burden and must meet this burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477

U.S. at 324. The nonmoving party must put forth more than a "mere 'scintilla' of evidence;" "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Thus, under Rule 56 summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

B. Plaintiff's EMTALA Claim[3]

"Congress enacted EMTALA to prevent hospitals from failing to examine and stabilize patients who seek treatment in their emergency departments." Harry v. Marchant, 237 F.3d 1315, 1317 (11th Cir. 2001) (internal citations omitted) . The act was "intended to protect patients by prohibiting hospitals from engaging in 'patient dumping,' the practice of refusing to examine or treat patients who came into the emergency room of the hospital but might be unable to pay." Id. (internal citations omitted). Accordingly, the

---

[3] Although it is not clear from the complaint whether or not Plaintiff intended to bring a EMTALA claim against Defendant Crowley, any intended claim against Defendant Crowley fails as the EMTALA creates a private right of action only against hospitals, not individual physicians. See Baber v. Hospital Corp. of America, 977 F.2d 872, 877 (4th Cir. 1992) ("Although the statute clearly allows a patient to bring a civil suit for damages for an EMTALA violation against a participating hospital, no section permits an individual to bring a similar action against a treating physician."); Delaney v. Cade, 986 F.2d 387, 394 (10th Cir. 1993) (citing Baber, 977 F.2d 876-78) ("[T]he plain language of the Act indicates individuals can bring civil actions only against participating hospitals.")

EMTALA provides in relevant part:

> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists.

42 U.S.C. § 1395dd(a) (2000). In accordance with the provision referenced above, the EMTALA provides any individual, who suffers personal harm as a result of a hospital's failure to provided an appropriate medical screening, with a private right of action against the offending hospital for damages. 42 U.S.C. § 1395dd(d)(2)(A) (2000).

Because the EMTALA is not a federal medical malpractice statute, the appropriateness of the medial screening required is not determined by its adequacy in identifying a patient's illness. Harry, 237 F.3d at 1319. Rather, "a hospital fulfills the 'appropriate medical screening' requirement when it conforms in its treatment of a particular patient to its standard screening procedures."Gatewood v. Washington HealthCare Corp., 933 F.2d 1037,1041 (D.C. Cir. 1991). In contrast, "any departure from standard screening procedures constitutes inappropriate screening in violation of the [EMTALA]." Id. Therefore, in order to succeed on an EMTALA claim against a hospital for failure to provide an appropriate medical screening, a plaintiff must show that the hospital in question treated him or her differently than other patients with similar conditions. Williams v. Birkeness, 34 F.3d 695, 697 (8th Cir. 1994).

6

Here, Defendants contend that Plaintiff's EMTALA claim should fail because the evidence submitted to the Court clearly demonstrates that Plaintiff received an extensive screening consistent with Defendant Hospital's general procedures.  Further, Defendants submit that there has been no evidence submitted that even suggests that Plaintiff's screening was materially different from the screening provided to others with similar conditions.

Plaintiff argues that Defendants' motion should be denied because a material factual dispute exists. Defendant asserts that he physically examined Plaintiff's abdomen, while Plaintiff asserts that he did not.  First, Plaintiff argues that this dispute concerns a material fact because Defendant Crowley admitted in a discovery deposition that an appropriate physical exam would have included pressing on Plaintiff's abdomen. Second, Plaintiff further argues that because Defendant Crowley stated that he always conducts a physical examination of the abdomen when a patient has been involved in a motor vehicle accident, that his failure to conduct a physical exam of Plaintiff's abdomen would establish Defendant Hospital's liability under the EMTALA.

While the Court notes that the parties disagree as to whether Defendant Crowley physically touched Plaintiff's abdomen during the screening, this factual dispute is not material to Plaintiff's EMTALA claim. The specific steps undertaken by a physician during the medical screening are not the focus of the EMTALA's safeguards. The EMTALA does not require hospitals to provide an examination whereby every

7

conceivably relevant examination or test is completed. As previously discussed, the EMTALA requires only that hospitals provide a medical screening similar to the one which they would provide any other patient. Thus, Plaintiff must provide some evidence that would at least allow the Court to infer that Defendant Hospital treated her differently than other similarly situated patients to survive summary judgment. There is simply no evidence in the record from which the Court can infer that Plaintiff was treated any differently by Defendant Hospital. Without some showing that Plaintiff's medical screening differed from the medical screenings routinely performed by Defendant Hospital, whether or not Defendant Crowley physically placed his hand on Plaintiff's abdomen is irrelevant.

    The fact that Defendant Crowley stated that an appropriate medical exam would include a physical examination of a patient's abdomen does not make the previously discussed factual dispute material to the Plaintiff's claim. Initially, the Court notes that after reviewing Defendant Crowley's deposition, it is clear that Defendant Crowley was not attempting to offer his opinion as to what an "appropriate medical screening,"within the meaning of the EMTALA, entails. Defendant Crowley was responding to a series of questions concerning the standard of care. In stating that an appropriate medical exam would include a physical examination of a patient's abdomen, Defendant Crowley was in essence agreeing that the standard of care, which is associated with the state law claim of medical malpractice and not the EMTALA, would require a physical examination.

Further, even if Defendant Crowley was attempting to state that an "appropriate medical screening" under the EMTALA would necessarily include a physical examination, Defendant Crowley's statement cannot set the standard for the Court. The term "appropriate medical screening" as it relates to the EMTALA is a legal term of art that denotes the type of care a hospital must provide in order to comply with the EMTALA. The definition of the term and its application to any given set of facts is governed by the EMTALA and relevant case law, not opinion testimony. Therefore, Defendant Crowley's testimony could not have established the requirements of an "appropriate medical screening" under the EMTALA, even if Defendant Crowley was attempting to do so.

Moreover, the fact that Defendant Crowley stated that he always performs a physical examination of the abdomen when a patient has been involved in a motor vehicle accident does not create a material fact dispute. As previously discussed, the EMTALA was enacted to ensure that individuals without the ability to pay for medical care would nevertheless receive basic life-sustaining treatment when in need. To that end the EMTALA requires that hospitals provide the same medical screening to indigent individuals as they provide to others. Thus, a plaintiff must show that the care he or she received did not comply with the hospital's standard practices.

Testimony from emergency room physicians regarding the hospital's normal procedures could be used to establish the hospital's standard practices and then establish that the Plaintiff did not receive care in accordance with those practices; however, the

testimony of one physician regarding his own standard procedures is not sufficient to establish the standard practices of the entire hospital. Because the EMTALA's purpose is to prevent discriminatory treatment by hospitals, it is the hospital's standard practices, rather than the individual practices of the physicians employed there, that are relevant in determining EMTALA liability. Therefore, showing that an individual physician either chose not to or forgot to conduct a physical exam of a specific area, which he or she normally performs, is not enough to establish the hospital's liability under the EMTALA.

When Plaintiff arrived at the emergency room, she was initially seen by a triage nurse within fifteen minutes. Plaintiff was then examined by a registered nurse and medical doctor. Plaintiff received a chest x-ray to determine the extent of her injuries and was provided pain medication before she was discharged. From the evidence submitted by both parties, it appears that Defendant Hospital provided Plaintiff with the same personnel, equipment, and time as it provided to others. Without some evidence from which the Court could infer that Plaintiff was treated by Defendant Hospital differently than others, the Court has no choice but to enter summary judgment in favor of Defendant Hospital on Plaintiff' EMTALA claim.

C. Plaintiff's Remaining State Claim

As the Court has found that Defendant Hospital is entitled to summary judgment on Plaintiff's EMTALA claim, the only remaining claim in this case is a negligence claim based on Georgia law. Diversity of citizenship does not exist and the federal claim on

which jurisdiction was based has been eliminated. Therefore, in accordance with 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction and dismisses Plaintiff's remaining state law claims without prejudice. (2000).

### III. CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted and Plaintiff's remaining state law claims are dismissed without prejudice.

**SO ORDERED**, this the 23rd day of May, 2006.

**/s/ Hugh Lawson**
**HUGH LAWSON, Judge**

scs